## S07F0132. GRISSOM v. GRISSOM.

(647 SE2d 1)

HUNSTEIN, Presiding Justice.

Appellant Daphne Darice Grissom ("Wife") and appellee Marquis Dean Grissom ("Husband") executed a prenuptial agreement prior to their marriage in July 2000. The agreement incorporated Exhibits A and B, wherein Wife and Husband listed their respective separate property, and various provisions of the agreement addressed the disposition of this property in the event of the termination of the parties' marriage. At issue here are two items listed as Husband's separate property on Exhibit B: a home located at 110 Fiddlers Ridge in Fairburn, Georgia, valued at two million dollars (the "Fiddlers Ridge property"); and a Merrill Lynch brokerage account valued at four million dollars.

Wife filed for divorce in May 2005 and a final judgment and decree was entered in January 2006. The trial court found that, pursuant to the terms of the prenuptial agreement, Wife waived any interest in the Fiddlers Ridge property or in an American Express brokerage account into which the funds from the Merrill Lynch account had been transferred during the marriage. We granted Wife's application to appeal this ruling pursuant to this Court's pilot project for divorce cases. See *Wright v. Wright,* 277 Ga. 133 (587 SE2d 600) (2003).

1. Relying on *Curtis v. Curtis,* 255 Ga. 288 (336 SE2d 770) (1985), Husband argues that Wife has waived the right to appeal by accepting the benefits of the final judgment and decree, i.e., a payment of $150,000 in lieu of alimony or equitable division of property pursuant to paragraph 14 of the parties' prenuptial agreement; a fifty percent interest in four parcels of real property; fifty percent of an income tax refund; and monthly child support payments. Although *Curtis* accurately states the general rule that an appellant cannot accept the benefits of a judgment and then seek to have it set aside, "[p]ublic policy . . . requires that divorce be treated differently because of the

unique and important issues involved, including the severing of the marital relationship, custody and support of minor children, support of spouses, and division of property." *Southworth v. Southworth*, 265 Ga. 671, 675 (461 SE2d 215) (1995) (Fletcher, P. J., concurring specially). We have long found an exception to the estoppel rule in situations where the acceptance of child support is at issue, reasoning that the benefit belongs to the child rather than the appealing spouse. See *Coley v. Coley*, 128 Ga. 654, 656 (1) (58 SE 205) (1907). We also find persuasive the approach taken by other states that have carved out exceptions to the estoppel rule in recognition of the realities of divorce and the policy considerations involved. See *Liming v. Liming*, 723 NW2d 89, 96-97 (Neb. 2006) (no waiver of right to appeal where spouse's right to benefits accepted is conceded by other spouse; spouse entitled as matter of right to benefits accepted such that outcome of appeal could have no effect on right to those benefits; or benefits accepted pursuant to severable award not subject to appellate review); 5 AmJur2d, Appellate Review, § 636 (rule precluding appeal by party who has accepted benefits of judgment applied less strictly in divorce cases, depending on factors such as whether amount received was small portion of total judgment; party's right to benefit accepted was undisputed; acceptance of benefits was due to financial distress; paying spouse has suffered prejudice; and only issue on appeal is whether award will be increased); Annot., Spouse's Acceptance of Payments under Alimony or Property Settlement or Child Support Provisions of Divorce Judgment as Precluding Appeal Therefrom, 29 ALR3d 1184. Thus, to the extent that *Curtis* and other cases can be read to hold that the acceptance of any benefit under a final judgment and decree of divorce results in an automatic waiver of the right to appeal any aspect of that judgment, they are hereby overruled.

Here, Wife's acceptance of child support payments is subject to our well-settled exception to the estoppel rule. As for the other accepted benefits at issue, Husband has not cross-appealed to dispute Wife's entitlement to the lump sum payment or the fifty percent interest in certain real property and an income tax refund. Under these circumstances, we find no waiver by Wife of her right to appeal the unrelated issues of her claimed interest in the Fiddlers Ridge property and the American Express account.

2. Neither party challenges the trial court's finding that the prenuptial agreement is enforceable. Paragraphs 6, 7 and 9 of the agreement provide, inter alia, that Husband retains "sole and exclusive ownership of all of his separate property as set forth in Exhibit 'B' " during his lifetime; that Husband and Wife each retain "free and clear of the other party any substitutions, transmutations and replacements of any assets set forth in Exhibits 'A' and 'B' "; and that

Wife waives "all right, title and interest in and to any and all of [Husband's] separate property as set forth in Exhibit 'B.' "

During the parties' marriage, the Fiddlers Ridge property was refinanced and conveyed to the parties as joint tenants with right of survivorship. When the American Express account was opened, Wife was shown as "Co-account holder." Wife claims that these changes entitle her to an ownership interest in the properties, relying on language in paragraph 11 of the parties' agreement providing that "the ownership of any real [or personal] property acquired by the parties in the future shall be determined in reference to the legal title to said property." But because the provision only applies to properties acquired "in the future," i.e., during the marriage, and both the Fiddlers Ridge property and the predecessor to the American Express brokerage account were acquired prior to the marriage, as established by their inclusion on Exhibit B of the prenuptial agreement, we agree with the trial court's conclusion that this language does not afford Wife an ownership interest in these assets.

Although the presence of Wife's name on the title to or registration of these properties gives Wife no rights in the assets under paragraph 11, paragraph 15 states that, notwithstanding any other provision of the agreement, each party has the right "to transfer, give or convey to the other any property or interest therein" and that any property so transferred "shall become the separate property" of the recipient. Wife relies upon this paragraph, along with *Lerch v. Lerch*, 278 Ga. 885 (608 SE2d 223) (2005), in support of her argument that Husband's conveyance to himself and Wife jointly of the Fiddlers Ridge property and the American Express account changed them from separate property to marital property. In *Lerch*, the parties had a prenuptial agreement in which the wife promised not to make any claims against the husband's property in the event of a divorce. Id. at 886 (2). Although the marital home had been purchased by the husband prior to the marriage, we held that the husband manifested an intent to transform his own separate property into marital property by transferring ownership of the home during the marriage to both himself and the wife as tenants in common. Id. at 886 (1). Here, however, Husband has claimed that the changes in ownership of the Fiddlers Ridge property and the brokerage account occurred without his knowledge and that he did not intend to convey any interest to Wife.

A review of the final judgment and decree in this case reveals that the trial court expressly declined to reach Husband's claims of accident, mistake and fraud before rendering its ruling.

In any situation involving the construction of a domestic or non-domestic contractual agreement, the goal is to look for

the intent of the parties. [Cits.] We look first to the language employed in the agreement to determine the intent of the parties. If the language is plain and unambiguous and the intent may be clearly gathered therefrom, we need look no further. [Cits.]

*Carlos v. Lane*, 275 Ga. 674, 675 (571 SE2d 736) (2002). The agreement should be construed in a manner that will allow it to be upheld as a whole and not make any provision meaningless. OCGA § 13-2-2 (4); *Dohn v. Dohn*, 276 Ga. 826, 828 (584 SE2d 250) (2003). Here, the plain language of paragraph 15 in the prenuptial agreement is clear that the legitimate conveyance of the Fiddlers Ridge property and the brokerage account from Husband to Husband and Wife jointly would change the treatment of these assets for purposes of distribution in accordance with the terms of the agreement. Without findings of fact regarding the circumstances surrounding the changes at issue, however, it is not clear that the conveyances were legitimate. Thus, we reverse and remand for the trial court to make such findings and to construe the parties' agreement as a whole in accordance with its findings.

*Judgment reversed and case remanded. All the Justices concur, except Thompson, J., who concurs in the judgment only, and Carley, Hines and Melton, JJ., who dissent.*

CARLEY, Justice, dissenting.

Whatever the rule may be in other states, the law of Georgia "is well settled [that] one who has accepted benefits such as alimony under a divorce decree is estopped from seeking to set aside that decree without first returning the benefits. [Cits.]" *White v. White*, 274 Ga. 884, 885 (1) (561 SE2d 801) (2002). If the Court had applied this clearly established principle in this case, Wife would have been estopped from attacking the divorce decree, because she has accepted, but not returned, benefits that were awarded to her thereunder. However, the three-Justice plurality opinion, p. 268, finds "persuasive the approach taken by other states that have carved out exceptions to the estoppel rule in recognition of the realities of divorce and the policy considerations involved" and, for that reason, dispenses with the Georgia rule and addresses the merits of Wife's contentions.

However, the rule in Georgia is not only well-settled, it is also one of long standing. At least as early as *Coley v. Coley*, 128 Ga. 654, 655-656 (1) (58 SE 205) (1907), this Court unanimously recognized that, in a divorce action, "[i]f a judgment is rendered in favor of the plaintiff, which she thinks too small, she may except and have the question tested, or she may suppress her dissatisfaction and collect

the judgment. She can not do both. [Cit.]" As recently as *Smith v. Smith*, 281 Ga. 204, 207 (2), fn. 11 (636 SE2d 519) (2006), Justice Hines, writing for a unanimous Court, held "that a person who has accepted benefits under a divorce decree is estopped from seeking to set aside that decree without first returning the benefits. [Cit.]" When referring to the decisions which must be overruled to reach the merits of this appeal, the plurality opinion simply mentions on p. 268 "*Curtis [v. Curtis*, 255 Ga. 288 (336 SE2d 770) (1985)] and other cases. . . . " In fact, over the nearly 100 years that separate the decision in *Coley* from the decision in *Smith*, this Court has repeatedly and consistently adhered to the rule that one, such as Wife, who accepts a benefit conferred by a divorce decree, cannot challenge the judgment in any respect unless and until those benefits have been returned. See *White v. White,* supra; *Curtis v. Curtis,* supra at 289; *Guess v. Guess,* 242 Ga. 786 (251 SE2d 528) (1979); *Wilkinson v. Wilkinson,* 241 Ga. 303, 304 (245 SE2d 278) (1978); *Vickery v. Vickery,* 237 Ga. 702 (229 SE2d 453) (1976); *Sikes v. Sikes,* 231 Ga. 105, 108 (200 SE2d 259) (1973); *Booker v. Booker,* 217 Ga. 342 (122 SE2d 86) (1961); *Burnham v. Burnham,* 215 Ga. 57, 58 (108 SE2d 706) (1959); *Thompson v. Thompson,* 203 Ga. 128 (2) (a), (b) (45 SE2d 632) (1947); *Davis v. Davis,* 191 Ga. 333 (a) (11 SE2d 884) (1940).

Thus, it is undisputed that adherence to the principle of stare decisis in this case would mandate a summary affirmance of the judgment on the ground that Wife, having accepted and retained benefits from the underlying divorce decree, cannot now attack it. See *Wilkinson v. Wilkinson,* supra.

> "The application of the doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence. In most instances, it is of more practical utility to have the law settled and to let it remain so, than to open it up to new constructions, as the personnel of the court may change, even though grave doubt may arise as to the correctness of the interpretation originally given to it. (Cits.)" [Cit.]

*Etkind v. Suarez*, 271 Ga. 352, 357 (5) (519 SE2d 210) (1999). The plurality does not present a convincing rationale to support its assertion that foreign authority is more persuasive than our own established rule. Therefore, I respectfully dissent.

The only reason the plurality offers as authority for overruling a century-old line of cases is that divorce should be treated differently because the dissolution of a marriage involves unique and important issues. However, divorce has always been different for that reason, but until today that difference has never been recognized as a basis for permitting a former spouse to retain benefits awarded by a decree,

while contemporaneously seeking the reversal of another portion of the judgment. "Having accepted the amount awarded by the judgment as alimony, [a former spouse] was estopped, while retaining it, from prosecuting [a] petition to set aside the decree of divorce as contained in the same judgment. [Cits.]" *Thompson v. Thompson*, supra. Compare *Coley v. Coley*, supra (no estoppel where accepted and retained award was for child, rather than spousal, support). The plurality does not cite any interest of an ex-spouse which has been compromised by our previous adherence to the principle of estoppel under the circumstances which exist here or any interest which might be advanced by a decision to dispense with it. Estoppel does not necessarily have an adverse financial effect, since, in Georgia, a former spouse can keep receiving any award of temporary alimony, the right to which

> " 'continues in full force and effect until a final judgment in the case, until the termination of the litigation in all courts, and as long as the case is pending, including litigation in the Supreme Court. [Cits.] The judgment cannot be treated as final so long as either party has the right to have it reviewed by the Supreme Court. [Cit.]' "

*McDonald v. McDonald*, 234 Ga. 37, 39 (3) (214 SE2d 493) (1975). Thus, although any Georgia ex-spouse who appeals only a portion of a divorce decree must decline to accept and retain benefits awarded thereby, he or she can continue to receive any temporary alimony awarded until such time as the rights of both parties are finally resolved.

The plurality's precipitous attempt at rejection of the well-established principle of estoppel is not only unnecessary to protect the right of a former spouse to pursue an appeal, that sea change in Georgia law would actually have a deleterious effect on the appellate process. Under our century-old rule, an ex-spouse who did not receive all that he or she sought in the divorce proceeding would be required to weigh the likelihood of success on appeal against his or her right to immediately receive the benefits conferred by the award. Under today's plurality opinion, however, there would be no reason not to seek appellate review, because an ex-spouse could retain benefits and also file an application for discretionary appeal which, even if meritless, would be granted under our pilot project unless frivolous. Thus, the net effect of today's decision, if it was controlling precedent for future cases, would be to delay the final resolution of divorce proceedings.

In that regard, however, our prior decisions cannot be overruled unless and until "a majority of this [C]ourt determines that stability

must give way. . . ." *Hall v. Hopper*, 234 Ga. 625, 632 (3) (216 SE2d 839) (1975). Insofar as today's decision is concerned, only three Justices have concurred fully in its holding and one Justice has concurred in the judgment only. Under Rule 58 of this Court, a concurrence in judgment only signifies that a Justice does "not agree with all that is said in the opinion." Accordingly, although today's opinion purports to overrule the long-standing line of cases, it does not achieve that goal because only a plurality, not a majority, of this Court has determined that those cases must "give way." Thus, the bench and bar should be apprised that *Curtis* and all of the other cases which apply estoppel under the circumstances of this case remain controlling authority for the present and that the holdings in those cases should be followed as accurate statements of the applicable law of Georgia.

Therefore, notwithstanding the plurality's attempt to evade the principle of stare decisis, only the parties to this case will be impacted by today's decision. However, the limited impact of the plurality's holding is not justification for failing to apply the Georgia rule of estoppel here, just as it has been applied in similar cases for 100 years. The fact that other states may follow a different rule is not, in my opinion, a valid basis for dispensing with the principle of stare decisis and overruling a well-established and long-standing line of Georgia cases. So, in accordance with the settled law of this state, the judgment in this case should be affirmed based upon the principle of estoppel and, therefore, I dissent to the reversal of the judgment on the merits.

I am authorized to state that Justice Hines and Justice Melton join in this dissent.

DECIDED JUNE 4, 2007 —
RECONSIDERATION DENIED JULY 12, 2007.

*Moss & Rothenberg, Robert A. Moss*, for appellant.
*Davis, Matthews & Quigley, Richard W. Schiffman, Jr., David N. Marple*, for appellee.